UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------X

FT & T CONSULTING, INC. and
UNITRANS-P.R.A., CO., INC.,

        Plaintiffs,

   -against-

B.O. ASTRA MANAGEMENT CORP., TAXI
CLUB MANAGEMENT, INC. and IGOR
MIKHLIN,

        Defendants.

--------------------------------X

**MEMORANDUM & ORDER**

12-cv-134 (KAM)(SMG)

**MATSUMOTO, United States District Judge:**

      Plaintiffs FT & T Consulting, Inc. ("FT&T") and

Unitrans-P.R.A., Co., Inc. ("Unitrans") (collectively,

"plaintiffs") commenced this breach of contract action against

defendants B.O. Astra Management Corp. ("B.O. Astra"), Taxi Club

Management, Inc. ("TCM"), and Igor Mikhlin ("Mikhlin") to

recover unpaid freight charges incurred for the shipment of five

automobiles from New York to Ukraine.  Pending before the court

is plaintiffs' motion for summary judgment on their claims

against defendant TCM, and TCM's cross-motion for summary

judgment on plaintiffs' claims.  For the reasons set forth

below, plaintiffs' motion is denied and TCM's motion is granted

in part and denied in part.

## Factual Background

The following facts are taken from the parties' Local Civil Rule 56.1 statements, and have not been specifically or directly disputed with admissible evidence unless otherwise indicated. References to paragraphs of the parties' Rule 56.1 statements include materials cited therein and annexed thereto.[1] The court has considered whether the parties have proffered admissible evidence in support of their factual statements and has viewed the facts in the light most favorable to the nonmoving parties. *See Spiegel v. Schulmann*, 604 F.3d 72, 81 (2d Cir. 2010) ("It is well established that, in determining the appropriateness of a grant of summary judgment, . . . the district court in awarding summary judgment, may rely only on admissible evidence.") (citations and internal quotations omitted)); *Scotto v. Brady*, 410 F. App'x 355, 361 (2d Cir. 2010) ("'[A] district court deciding a summary judgment motion has broad discretion in choosing whether to admit evidence,' and '[t]he principles governing admissibility of evidence do not change on a motion for summary judgment.'") (quoting *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009)).

---

[1] "Pl. 56.1" refers to plaintiffs' Rule 56.1 Statement (ECF No. 74-1), and "TCM 56.1" refers to defendant TCM's Rule 56.1 Statement (ECF No. 72-1). Plaintiffs filed a reply to TCM's Rule 56.1 Statement ("Pl. Reply 56.1") and TCM filed a reply to plaintiffs' Rule 56.1 Statement ("TCM Reply 56.1").

## I.   The Parties

Plaintiff Unitrans is a non-vessel operating common carrier ("NVOCC")[2] that provides shipping and freight forwarding services.  (Pl. 56.1 ¶ 1.)  Unitrans specializes in arranging for the shipment of automobiles from the United States to destinations overseas.  (*Id.*)  Plaintiff FT&T is a consulting company that provides administrative services, such as document preparation and payment collection, to support Unitrans' freight forwarding operations.  (Pl. 56.1 ¶ 1; TCM 56.1 ¶ 2; Pl. Reply ¶ 6.)  Simon Kaganov is the president and one-third shareholder of Unitrans, and a vice president and fifty percent shareholder of FT&T.  (Joint Appendix ("JA") 1, 9/4/2014 Deposition of Simon Kaganov ("Kaganov Dep.") Tr. 12:13-15; TCM 56.1 ¶ 2.)

On approximately 100 occasions from 2004 to 2007, plaintiffs contracted with defendant B.O. Astra to ship B.O. Astra's automobiles abroad.  (TCM 56.1 ¶ 5.)  B.O. Astra was represented in these transactions by defendant Igor Mikhlin.[3] (*Id.*)  Plaintiffs considered B.O. Astra, represented by Mikhlin, to be a "good client," and ultimately shipped approximately 300

---

[2] An NVOCC is "an entity that arranges transportation for hire and assumes liability for the goods being transported but does not undertake actual transportation of the goods." *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 966 F. Supp. 2d 270, 273 (S.D.N.Y. 2013), *aff'd*, 762 F.3d 165 (2d Cir. 2014).  NVOCCs are commonly referred to as "freight forwarders."

[3] Mikhlin's official position or title at B.O. Astra during this period is not clear from the record.  The parties agree, however, that Mikhlin was the only person from B.O. Astra that plaintiffs met or dealt with during the relevant time period.  (TCM 56.1 ¶ 8.)

automobiles overseas for B.O. Astra and Mikhlin between 2004 and 2007.  (TCM 56.1 ¶¶ 5, 7.)

On several occasions during this period, Mikhlin discussed with plaintiffs' principals his intention to start a taxicab company in Ukraine.  (TCM 56.1 ¶ 9.)  In early 2007, Mikhlin retained plaintiffs' services to ship automobiles from the United States to Odessa, Ukraine.  (Pl. 56.1 ¶ 5; TCM 56.1 ¶ 10.)  However, Mikhlin informed plaintiffs that for these shipments he would be acting on behalf of a company known as Taxi Club Management.  (Pl. 56.1 ¶ 5; TCM 56.1 ¶ 10.)  TCM is an insurance broker that, among other things, writes insurance policies for taxis or for-hire vehicles in New York City.  (TCM 56.1 ¶ 11.)  The president and sole shareholder of TCM, Evgeny Freidman, is Mikhlin's cousin.  (Pl. 56.1 ¶¶ 3-4.)

## II.  Shipment of Automobiles to Ukraine and Payment Dispute

From approximately March 2007 to January 2009, plaintiffs shipped "numerous" vehicles from the United States to various locations overseas at Mikhlin's request and direction. (Pl. 56.1 ¶ 6.)  At issue here are three October 2007 contracts to ship five automobiles to Odessa, Ukraine:

    a. 2008 Lexus GX470 (Vehicle Identification No. ending 0032)

    b. 2008 Lexus ES350 (VIN ending 3391)

    c. 2008 Lexus ES350 (VIN ending 4761)

    d. 2008 Mercedes S550 (VIN ending 1321)

e. 2007 Mercedes CL550 (VIN ending 8253)

(Pl. 56.1 ¶ 13.) Plaintiffs shipped these automobiles (the "Odessa Vehicles") pursuant to three bills of lading[4] prepared by Unitrans. (Joint Exhibit A, at 304-09.) Each bill of lading lists "Taxi Club Management, Inc./Igor Mikhlin" as the "Exporters" along with TCM's address. (*Id.*) "Unitrans-P.R.A. Co, Inc." is listed as the "Forwarding Agent." (*Id.*) The terms and conditions for the shipments are set forth on the backsides of the bills of lading. (Pl. 56.1 ¶ 8.)[5]

After shipping the Odessa Vehicles to Ukraine in October 2007 (Pl. 56.1 ¶ 21), FT&T issued three invoices totaling $139,434 for freight, shipping, and other costs. (Pl. 56.1 ¶¶ 10-11; TCM 56.1 ¶ 21.) The five automobiles listed on the invoices match the Odessa Vehicles listed on the bills of lading. (Joint Exhibit A, at 159, 165, 180.) Plaintiffs issued the invoices in October 2007 to "Taxi Club Management, Inc. c/o Igor Mikhlin," at TCM's address. (*Id.*)

---

[4] "A bill of lading records that a carrier has received goods from the party that wishes to ship them, states the terms of carriage, and serves as evidence of the contract for carriage." *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 18-19 (2004).

[5] The court notes that the terms and conditions on the backsides of the bills of lading attached to the parties' Joint Exhibits are illegible. However, the parties do not appear to dispute that the terms and conditions of the bills of lading require the "Exporter" to pay shipping costs incurred by Unitrans. The present dispute concerns whether TCM is bound by the bills of lading and thus may be considered an "Exporter" owing a payment obligation to plaintiffs for shipment of the Odessa Vehicles.

The Odessa Vehicles arrived at their port of
destination in Odessa, Ukraine in December 2007. (Pl. 56.1 ¶
22.) The invoices had not been paid when the Odessa Vehicles
arrived in Ukraine, which Kaganov (Unitrans' president)
considered "unusual" because plaintiffs' customers typically pay
their shipping invoices before cargo arrives at its final
destination. (Pls. 56.1 Reply ¶ 19; Kaganov Dep. Tr. 44:21-
45:10.) After the vehicles arrived in Ukraine in December 2007,
Mikhlin asked plaintiffs to release the Odessa Vehicles to the
consignee[6] listed on the bills of lading in exchange for
Mikhlin's partial payment of the $139,434 invoice amount. (Pl.
56.1 ¶ 22.) Plaintiffs agreed to Mikhlin's request to release
the vehicles "[i]n light of the long history of the parties
doing business together" and in order to spare Mikhlin from
incurring storage charges in Ukraine while arranging for payment
of the balance due to plaintiffs. (*Id.*)

After releasing the Odessa Vehicles in Ukraine,
plaintiffs made multiple requests to Mikhlin for payment of the
invoices. (Pl. 56.1 ¶ 25.) In February 2008, Mikhlin presented
plaintiffs with two checks payable to FT&T in the amount of
$20,000 and $30,000. (*Id.*) The checks identified "Taxi Club
Management, Inc." as the drawer for a J.P. Morgan Chase bank

---

[6] The consignee is a Ukrainian company and not a party to this action.

6

account ending in 4120 (the "Chase 4120 Account"). (Pl. 56.1 ¶ 25; Joint Ex. A, at 199-200.) Plaintiffs contend that both checks were signed by Evgeny Freidman, TCM's president. (Pl. 56.1 ¶ 42.) Although it is undisputed that Freidman is the only signatory for the Chase 4120 Account (Pl. 56.1 ¶ 36), Freidman testified that the checks do not bear his actual signature and were forged. (TCM 56.1 Reply ¶ 25; JA 5, 11/11/2014 Deposition of Evgeny Freidman ("Freidman Dep.") Tr. 51:23-53:17.) Plaintiffs attempted to deposit the checks, but the checks did not clear due to insufficient funds in the Chase 4120 Account. (Pl. 56.1 ¶ 27.)

In April or May 2008, an FT&T employee named Viktoriya Farber began attempting to collect the unpaid invoices from Mikhlin by calling TCM's offices and mailing copies of the invoices to Mikhlin and TCM. (Pl. 56.1 ¶¶ 29-34.) She spoke with Mr. Mikhlin on one occasion (Pl. 56.1 ¶ 30), but was unsuccessful in her attempts to collect payment on the invoices. (Pl. 56.1 ¶¶ 31-33.) It is undisputed that, to date, plaintiffs have not received payment for the invoices totaling $139,434.

The subject of the pending motions is whether TCM has any obligation to pay plaintiffs' outstanding freight invoices pursuant to the bills of lading. TCM contends that it never contracted to ship the Odessa Vehicles or authorized Mikhlin to act on its behalf, and therefore has no obligation to pay

plaintiffs.  Plaintiffs counter that TCM is required to pay the
freight charges because TCM owned the Odessa Vehicles and is
bound by the bills of lading, which they contend Mikhlin
executed on TCM's behalf.

## Procedural History

Plaintiffs filed this action on January 11, 2012.
(ECF No. 1, Complaint.)  On March 26, 2012, TCM answered the
Complaint and filed a cross-claim for indemnification against
B.O. Astra and Mikhlin, alleging that B.O. Astra and Mikhlin
"fraudulently held themselves out as officers, directors and/or
agents of defendant Taxi Club Management, Inc."  (ECF No. 9,
Answer and Cross-Claim.)  Neither B.O. Astra nor Mikhlin has
answered or otherwise responded to the Complaint or cross-claim.
The Clerk of Court entered a certificate of default against B.O.
Astra and Mikhlin on February 22, 2012.  (ECF No. 4.)[7]  After
extensive discovery, plaintiffs and TCM filed cross-motions for
summary judgment on September 21, 2015.  (ECF No. 74, Memorandum
in Support of Plaintiffs' Motion for Summary Judgment ("Pl.
Mem"); ECF No. 72, Memorandum in Support of TCM's Motion for
Summary Judgment ("TCM Mem.").)

---

[7] The Clerk of Court's February 22, 2012 certificate of default included TCM,
but plaintiffs subsequently agreed to extend TCM's deadline to answer until
March 26, 2012.  (ECF No. 8.)

Plaintiffs move for summary judgment on their claims against TCM for: (1) breach of contract; (2) unjust enrichment; (3) quantum meruit; (4) account stated; and (5) dishonored checks.  TCM cross-moves for summary judgment on these claims, and on all other claims alleged against TCM: (6) common law fraud and fraud in the inducement; (7) "cause of action to pierce the corporate veil;" (8) violation of RICO under 18 U.S.C. § 1962(c); and (9) conversion and breach of fiduciary duty.

### Subject Matter Jurisdiction

Federal courts have jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction."  28 U.S.C. § 1333(1).  To determine whether a contract falls within maritime jurisdiction, courts consider "the nature and character of the contract" and ask "whether it has reference to maritime service or maritime transactions." *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 24 (2004).  A bill of lading is considered a maritime contract "so long as [the] bill of lading requires substantial carriage of good by sea." *Id.* at 27.  The bills of lading at issue govern shipment of the Odessa Vehicles by sea from New York to Ukraine.  Thus, the bills of lading are maritime contracts and subject matter jurisdiction is established pursuant to 28 U.S.C. § 1333(1).

**Discussion**

## I.  Legal Standard

"Summary judgment is appropriate where there is no
genuine dispute as to any material fact and the record as a
whole indicates that no rational factfinder could find in favor
of the non-moving party." *Graves v. Finch Pruyn & Co.,* 353 F.
App'x 558, 560 (2d Cir. 2009) (citing *Rodal v. Anesthesia Grp.
of Onondaga, P.C.,* 369 F.3d 113, 118 (2d Cir. 2004)).  "In
ruling on a summary judgment motion, the district court must
resolve all ambiguities, and credit all factual inferences that
could rationally be drawn, in favor of the party opposing
summary judgment and determine whether there is a genuine
dispute as to a material fact, raising an issue for trial."
*McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 202 (2d Cir.
2007) (quotation marks omitted).  "A fact is material when it
might affect the outcome of the suit under governing law."  *Id.*
(internal quotation marks omitted).  Moreover, an issue of fact
is genuine only if "the evidence is such that a reasonable jury
could return a verdict for the nonmoving party."  *Anderson v.
Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"In order to defeat a motion for summary judgment
supported by proof of facts that would entitle the movant to
judgment as a matter of law, the nonmoving party is required
under Rule 56(e) to set forth specific facts showing that there

10

is a genuine issue of material fact to be tried." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 532 (2d Cir. 1993) (citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude entry of summary judgment." *Anderson,* 477 U.S. at 248. The nonmoving party may not, however, "rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the nonmoving party's pleading." *Ying Jing Gan*, 996 F.2d at 532-33 (citations and quotation marks omitted).

The same standard is applied to cross-motions for summary judgment. *See Morales v. Quintel Entm't, Inc.,* 249 F.3d 115, 121 (2d Cir. 2001); *Eschmann v. White Plains Crane Serv., Inc.*, No. 11-CV-5881, 2014 WL 1224247, at *3 (E.D.N.Y. Mar. 24, 2014). The court must examine each party's motion independently and "in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales*, 249 F.3d at 115 (citation omitted).

## II. Breach of Contract

Plaintiffs' breach of contract claim is premised on the bills of lading, which list TCM and Mikhlin as "exporters." TCM contends that plaintiffs' breach of contract claim fails because TCM never agreed to be bound by the bills of lading and did not authorize Mikhlin to execute them on TCM's behalf.

11

A bill of lading is "the basic transportation contract between the shipper-consignor and the carrier; its terms and conditions bind the shipper and all connecting shippers." *Southern Pac. Transp. Co. v. Commercial Metals Co.*, 456 U.S. 336, 342 (1982). Because the bills of lading at issue are maritime contracts, federal common law controls their interpretation so long as the dispute is not "inherently local." *Kirby*, 543 U.S. at 22-23. This dispute is not "inherently local" because the bills of lading govern the shipment of goods from New York to Ukraine. Consequently, the court must apply "common law principles of contract formation to determine whether" TCM was bound by the bills of lading. *In re M/V Rickmers Genoa Litig.*, 622 F. Supp. 2d 56, 71 (S.D.N.Y. 2009); *Nippon Yusen Kaisha v. FIL Lines USA Inc.*, 977 F. Supp. 2d 343, 349 (S.D.N.Y. 2013) ("Under federal common law, 'contracts for carriage of goods by sea must be construed like any other contracts: by their terms and consistent with the intent of the parties.'") (quoting *Kirby*, 543 U.S. at 31)).

Although TCM and Mikhlin are both listed as exporters on the bills of lading, it is undisputed that plaintiffs dealt exclusively with Mikhlin when forming the contracts. (Pl. 56.1 ¶ 4; TCM 56.1 ¶ 10). Nor is it disputed that Mikhlin "represented himself to be an agent of TCM" at the time of contracting. (Pl. 56.1 ¶ 4.) TCM argues that Mikhlin's

representation to plaintiffs raises a question of agency, *i.e.*, did Mikhlin have the authority to bind TCM to the bills of lading. Plaintiffs contend that Mikhlin's authority to bind TCM (or lack thereof) is irrelevant. According to plaintiffs, TCM is automatically bound to the bills of lading (and thus, responsible for shipping costs) as a result of TCM's alleged ownership of the Odessa Vehicles. (Pl. Mem. at 13) ("TCM, as owner of the cargo, is bound by the terms and conditions set forth on the bills of lading").

Plaintiffs primarily rely on *A.P. Moller-Maersk A/S v. Ocean Express Miami*, 550 F. Supp. 2d 454 (S.D.N.Y. 2008) and *Laufer Group International v. Tamarack Industries, LLC*, 599 F. Supp. 2d 528 (S.D.N.Y. 2009) to argue that ownership of goods alone is sufficient to bind a party to a bill of lading. (Pl. Opp. at 8-9.) Neither case supports plaintiffs' position.

In *A.P. Moeller-Maersk*, a cargo owner contracted with a freight forwarder to ship printing machinery. *Id.* at 457-458. The freight forwarder then contracted with a second freight forwarder that, in turn, subcontracted with a carrier. The cargo owner denied that it could be bound by a forum selection clause in a bill of lading that the second freight forwarder executed with the carrier. The *A.P. Moeller-Maersk* court recognized the "default rule" that a freight forwarder has "limited agency" to bind a cargo owner to a carrier's bill of

lading; it therefore held that the subcontracting freight forwarder bound the cargo owner to the downstream carrier's forum selection clause. *Id.* at 466. The court explained that a contrary rule would "effectively render carriers unable to contract for selection of a forum." *Id.* at 465; *cf. Chicago, Milwaukee, St. P. & P.R. Co. v. Acme Fast Freight*, 336 U.S. 465, 486 (1949) (when shipping goods tendered by a freight forwarder, "the *carrier* is not concerned with questions of ownership, but must treat the *forwarder* as shipper") (emphasis added). This longstanding "default rule" regarding a freight forwarder's limited agency is not at issue here. Unlike in *A.P. Moeller-Maersk*, where the cargo owner never disputed that it initially contracted with a freight forwarder, here TCM (the alleged cargo owner) disputes that it ever contracted with plaintiffs (the freight forwarder) to ship the Odessa Vehicles, despite the bills of lading that indicate TCM and Mikhlin are the "exporters."[8]  *A.P. Moeller-Maersk* thus provides no support for plaintiffs' position.

---

[8] This distinction also renders inapposite *Nippon Fire & Marine Insurance Co., Ltd. v. Skyway Freight Systems, Inc.*, 45 F. Supp. 2d 288 (S.D.N.Y. 1999), upon which plaintiff relies to argue it was "entitled to assume" Mikhlin had authority to ship goods on TCM's behalf. (Pl. Opp. at 10.)  *Nippon Fire* involved tort claims brought by a shipper's insurer against a subcontracting common carrier.  As in *A.P. Moeller-Maersk*, it was undisputed in *Nippon* that the shipper actually owned the goods and validly contracted with the freight forwarder for shipment.  45 F. Supp. 2d at 289.

In *Laufer*, a freight forwarder seeking payment for
shipping services filed suit against the alleged cargo owner,
Tamarack Industries.  The freight forwarder had provided
shipping services pursuant to a bill of lading that stated the
"owner of goods" was jointly and severally liable for shipping
charges.  599 F. Supp. 2d at 530.  Tamarack argued it was not
bound to a forum selection clause in the bill of lading because
it (1) was not listed as a party to the bill of lading, and (2)
did not authorize the party that was listed, Botanical Silk, to
accept the bill of lading on Tamarack's behalf.  *Id.* at 530-31.

The *Laufer* court concluded that Tamarack was bound by
the forum selection clause in the bill of lading.  Contrary to
plaintiffs' contention, however, the court did not reach the
sweeping conclusion that ownership of cargo alone is sufficient
to bind a party to a bill of lading, regardless of the owner's
consent to be bound.  Rather, the *Laufer* court, relying on *A.P.
Moeller-Maersk*, indicated that an owner of cargo may be bound by
a forum selection clause in a bill of lading accepted by an
intermediary "if that party was *acting on behalf of the owner*,
or was *acting as the owner's agent*."  *Id.* at 531 (emphasis
added).  Applying that standard to the facts of the case, the
*Laufer* court found that a consignment agreement between Tamarack
and Botanical Silk established that the shipment was made on
Tamarack's behalf.  *Id.* at 531-32.  The consignment agreement

defined Tamarack as the "Principal" and Botanical Silk as the
"Consignee," and indicated that Tamarack was purchasing goods
for subsequent use by Botanical Silk. *Id.* at 531. Thus, the
written agreement between Botanical Silk and Tamarack – not
Tamarack's ownership of goods alone – evidenced Tamarack's
consent to be bound by the bill of lading between Botanical Silk
and the freight forwarder.

*Laufer* is consistent with the common law principle
that "a party is not bound to the terms of a bill of lading
unless the party consents to be bound." *In re M/V Rickmers
Genoa Litig.*, 622 F. Supp. 2d 56, 71 (S.D.N.Y. 2009) (citing
*Stein Hall & Co. v. S.S. Concordia Viking*, 494 F.2d 287, 291 (2d
Cir. 1974)). Here, unlike in *Laufer*, TCM vigorously disputes
there was any agreement between the intermediary (Mikhlin) and
the purported owner (TCM) evidencing TCM's consent to be bound
by the bills of lading.

"In admiralty, whether one party has authority to bind
another to a maritime contract is a question of general maritime
law." *Garanti Finansal Kiralama A.S. v. Aqua Marine and Trading
Inc.*, 697 F.3d 59, 71 (2d Cir. 2012). Federal maritime law, in
turn, "embraces the principles of agency." *Id.* (quoting *Kirno
Hill Corp. v. Holt*, 618 F.2d 982, 985 (2d Cir. 1980)). Based on
these principles, the court finds that application of agency law

is necessary to determine whether Mikhlin had authority to bind TCM to the bills of lading.

Courts in this Circuit have looked to the Restatement of Agency "in specifying the contours of federal maritime common law agency principles." *In re M/V Rickmers*, 622 F. Supp. 2d at 73; *Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.,* 782 F.2d 329, 339–40 (2d Cir. 1986). A fundamental principle of agency law is that an agency relationship exists only if the agent is acting on behalf of, and subject to, the control of the principal. *See* Restatement (Second) of Agency (2006) §§ 14-15. Under the common law, "the party asserting that a relationship of agency exists generally has the burden in litigation of establishing its existence." Restatement (Third) of Agency § 1.02 cmt. d.

An agent can possess actual authority, "meaning explicit permission from the principal to act on its behalf," or apparent authority, "by which the agent can affect the principal's legal relations with a third party when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." *Garanti Finansal*, 697 F.3d at 72 (quoting Restatement (Third) of Agency § 2.01 (internal citations omitted)). Ordinarily, "the existence of either actual or apparent authority is a question of fact, revolving as it does around the actions by, and relationships between,

17

principal, agent, and third parties." *Id.* Thus, the Second
Circuit has cautioned that "the existence and scope of an agency
relationship" can only be resolved on summary judgment if (1)
the relevant facts are undisputed, or (2) there is only way for
a reasonable jury to interpret the relevant facts. *Id.*

### A. Actual Authority to Bind TCM to the Bills of Lading

Actual authority exists when an agent has the power
"to do an act or to conduct a transaction on account of the
principal which, with respect to the principal, he is privileged
to do because of the principal's manifestation to him."
*Minskoff v. American Exp. Travel Rel. Servs. Co.*, 98 F.3d 703,
708 (2d Cir. 1996) (quoting Restatement (Second) of Agency § 7
cmt. a (1958)). Actual authority may be express or implied.
Express authority is "[a]uthority distinctly, plainly expressed,
orally or in writing." *Nationwide Life Ins. Co. v. Hearst/ABC-
Viacom Entm't Servs.*, 1996 WL 263008, at *8 (S.D.N.Y. May 17,
2008) (quoting Black's Law Dictionary 521 (5th ed. 1979)).
Implied authority exists "when verbal or other acts by a
principal reasonably give the appearance of authority to the
agent." *99 Commercial St., Inc. v. Goldberg*, 811 F. Supp. 900,
906 (S.D.N.Y. 1993).

Nothing in the record supports the conclusion that
Mikhlin had actual authority to execute the bills of lading on

TCM's behalf.  TCM's president, Evgeny Freidman, denied that

Mikhlin ever worked for TCM, or that TCM ever gave Mikhlin

authority to act on TCM's behalf.  (Freidman Dep. Tr. 19:6-15.)

There is no contradictory testimony from Mikhlin, who has not

appeared or been deposed in this action.  Plaintiffs suggest

that Mikhlin had authority to act on TCM's behalf based on TCM's

course of dealing with Mikhlin.  (Pl. Reply at 7-8.)

Specifically, plaintiffs point to Freidman's admission that TCM

"managed some [taxi] mini-fleets of which Igor Mikhlin was

principal" to show that TCM had prior business dealings with

Mikhlin.  (*Id.*; *see also* ECF No. 64, Affidavit of Evgeny

Freidman dated 2/23/2016).  But Freidman's admission regarding

taxi mini-fleets does not tend to prove that TCM authorized

Mikhlin to ship the Odessa Vehicles.  Thus, there is no basis to

conclude that Mikhlin acted with actual authority.

### B.    Apparent Authority to Bind TCM to the Bills of Lading

Apparent authority is "entirely distinct" from actual

authority and "arises from the 'written or spoken words or any

other conduct of the principal which, reasonably interpreted,

causes [a] third person to believe that the principal consents

to have [an] act done on his behalf by the person purporting to

act for him.'"  *Minskoff*, 98 F.3d at 708 (citations omitted)

(quoting Restatement (Second) of Agency § 8 cmt. a, § 27

(1958)).  "To recover against a *principal* on an apparent
authority theory, it is crucial to prove the *principal* was
responsible for the appearance of authority in the agent."
*Garanti*, 697 F.3d at 73 (internal quotation omitted).

Here, a genuine factual dispute exists as to whether
TCM's conduct caused plaintiffs to reasonably believe that TCM
consented to have Mikhlin execute the bills of lading.
Plaintiffs present evidence that at the time of contracting,
Mikhlin delivered the Odessa Vehicles to plaintiffs along with
(1) the Vehicles' certificates of origin, and (2) bills of sale
allegedly issued to TCM upon purchase of the Odessa Vehicles
from auto dealers.  (Pl. Mem. at 5; Pl. 56.1 ¶¶ 13-20.)

The parties' Joint Exhibits include copies of the
certificates of origin and bills of sale for four of the five
Odessa Vehicles.  (Joint Ex. A, at 160, 168-69, 171, 174, 182,
184.)[9]  The certificates of origin do not include a chain of
title that identifies the owners of the vehicles.[10]  The bills of
sale do identify TCM as purchaser, however.  A bill of sale
dated September 23, 2007 from auto dealer "Easy Leasing" for the

---

[9] Plaintiffs explain that the certificate of origin and bill of sale for the
fifth Odessa Vehicle, a 2007 Mercedes CL550, "were destroyed and/or misplaced
as a result of Hurricane Sandy in 2012."  (Pl. Reply at 5.)

[10] Plaintiffs contend that the dealerships did not register the Odessa
Vehicles with the New York State Department of Motor Vehicles, nor obtain
title for these vehicles, because the vehicles were meant for export
overseas.  (Pl. Reply at 6; Pl. 56.1 ¶¶ 16-19.)

2008 Mercedes S550 (VIN ending 1321) identifies "Taxi Club Management" as purchaser, and is signed by "IM." (Joint Ex. A, at 174.) Bills of sale dated October 2 and October 6, 2007 from auto dealer "Boomerang Auto" for the 2008 Lexus GX470 (VIN ending 0032), the 2008 Lexus ES350 (VIN ending 3391), and 2008 Lexus ES350 (VIN ending 4761) are billable to "Taxi Club," and state "Ref: Mihlin" [sic] under TCM's address. (Joint Ex. A, 171, 184.) On each bill of sale there is a handwritten four-digit number that corresponds to the last four digits of checks paid in February 2008 from TCM's "Chase 4120 Account" to Boomerang Auto and Easy Leasing. (*Id.*; Pl. 56.1 ¶¶ 39-41.) This evidence tends to show that TCM purchased the Odessa Vehicles, and is relevant to whether Mikhlin had authority to ship the Odessa Vehicles in October 2007.

Plaintiffs' evidence is not uncontroverted. TCM argues there are no official "state documents" establishing TCM's ownership of the vehicles (TCM Mem. at 21); there is no bill of sale for the 2007 Mercedes CL550; and the only bill of sale that is signed – the invoice from Easy Leasing for the 2008 Mercedes S550 – bears the signature of "IM," which are Igor Mikhlin's initials. (TCM 56.1 ¶ 32.) TCM's president, Evgeny Freidman, testified under oath that TCM has never purchased a vehicle in its history. (Freidman Dep. Tr. 96:9-11.) He further testified that Mikhlin never worked for TCM and was

never authorized to conduct business on TCM's behalf.  (Freidman Dep. Tr. 19:6-15.)  TCM has filed cross-claims against Mikhlin and B.O. Astra alleging that they "fraudulently held themselves out as officers, directors and/or agents of defendant Taxi Club Management, Inc."  (ECF No. 9, Answer and Cross-Claim.)

One conclusion to be drawn from the facts summarized above is that TCM purchased the Odessa Vehicles and plaintiffs reasonably believed that TCM consented to their shipment based on the documents Mikhlin presented at the time of contracting. Another conclusion, however, is that Mikhlin purchased the Odessa Vehicles using TCM's checks without TCM's knowledge or consent and unilaterally shipped them to Ukraine.

Based on the record before the court, there remain genuine factual disputes regarding Mikhlin's authority to bind TCM to the bills of lading.  Although plaintiffs may ultimately prevail on their theory that TCM owned the Odessa Vehicles and Mikhlin acted on TCM's behalf when shipping them, there is disputed evidence in the record that precludes the court from reaching that conclusion as a matter of law.  Moreover, there is disputed evidence as to whether Mikhlin acted with or without TCM's authorization.  Accordingly, the parties' cross-motions are denied as to plaintiffs' breach of contract claim.

## III. Unjust Enrichment and Quantum Meruit

Plaintiffs bring separate claims for unjust enrichment and quantum meruit.  The Second Circuit has instructed that courts "may analyze quantum meruit and unjust enrichment together as a single quasi contract claim."  *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005); *see also Newman & Schwartz v. Asplundh Tree Expert Co., Inc.,* 102 F.3d 660, 663 (2d Cir. 1996) (citing *Seiden Assocs., Inc. v. ANC Holdings, Inc.,* 768 F. Supp. 89, 96 (S.D.N.Y. 1991) (explaining that "quantum meruit and unjust enrichment are not separate causes of action"), *rev'd on other grounds,* 959 F.2d 425 (2d Cir. 1992)).  Plaintiffs do not distinguish between the two causes of action in their briefing. (Pl. Opp. at 13) (referring to plaintiffs' "alternate theory of unjust enrichment and/or quantum meruit").  The court therefore will analyze these claims together under a quantum meruit theory.  *See Peninsular & Oriental Steam Navigation Co. v. Overseas Oil Carriers, Inc.,* 553 F.2d 830, 835 (2d Cir. 1977) ("[T]he law is clear that quasi-contractual claims may be considered by the federal courts in admiralty if they arise out of maritime contracts, or other inherently maritime transactions.") (citations and footnote omitted).

The parties cite New York law in support of their cross-motions on plaintiffs' state law claims.  Because the

parties agree to the application of New York law, the court will apply New York law to those claims. *See Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997) ("where the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry"); *see also Integral Control Sys. Corp. v. Consolidated Edison Co. of New York,* 990 F. Supp. 295, 298 (S.D.N.Y. 1998) (considering a third-party defendant's quantum meruit counterclaim under New York law where the plaintiffs had invoked admiralty jurisdiction).

In order to recover under a theory of quantum meruit, a plaintiff must establish "(1) the performance of services in good faith; (2) the acceptance of those services by the person to whom they are rendered; (3) an expectation of compensation therefor; and (4) the reasonable value of the services." *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 66 (2d Cir. 1999) (quotation omitted). There is no dispute that elements one, three, and four are satisfied by the evidence in the record. With respect to the second element, there are genuine factual disputes as to whether TCM accepted plaintiffs' shipping services.

Additionally, New York law does not permit recovery in quantum meruit "if the parties have a valid, enforceable contract that governs the same subject matter as the quantum meruit claim." *Mid-Hudson*, 418 F.3d at 175; *R.B. Ventures, Ltd.*

*v. Simon R. Shane,* 112 F.3d 54, 60 (2d Cir. 1997) (quantum

meruit claims are "non-contractual, equitable remedies that are

inapplicable if there is an enforceable contract governing the

subject matter").  If plaintiffs' are able to recover on their

contract claim, they cannot recover on their quantum meruit

claim.  However, if a jury finds that no contract existed

between plaintiffs and TCM, plaintiffs may be entitled to

recover against TCM on a quantum meruit theory if TCM is found

to have accepted shipment of the Odessa Vehicles.  *See Muller*

*Boat Works, Inc. v. Unnamed 52%2C House Barge*, 464 F. Supp. 2d

127, 141 (E.D.N.Y. 2006) ("Having concluded that plaintiff

failed to prove the existence of a valid hourly contract for the

services it actually performed . . . the Court considers whether

plaintiff is entitled to be reasonably compensated for services

rendered on the vessel under the theory of *quantum meruit*.").

        The parties' cross-motions for summary judgment are

denied as to plaintiffs' quantum meruit claim.  TCM's motion is

granted as to plaintiffs' unjust enrichment claim because the

unjust enrichment claim is duplicative of plaintiffs' quantum

meruit claim.  *See Learning Annex Holdings, LLC v. Rich Glob.,*

*LLC*, 860 F. Supp. 2d 237, 250 (S.D.N.Y. 2012)*, aff'd sub nom.*

*Learning Annex Holdings, LLC v. Cashflow Techs., Inc.*, No. 12-

3232, 2016 WL 3409687 (2d Cir. June 21, 2016) (finding quantum

meruit and unjust enrichment are not distinct grounds for

recovery in the context of a claim for services rendered in the absence of an enforceable contract).

## IV. Account Stated

An account stated is "an agreement between the parties to an account based upon prior transactions between them with respect to the correctness of the separate items composing the account and the balance due, if any, in favor of one party or the other." *Kramer, Levin, Nessen, Kamin & Frankel v. Aronoff*, 638 F. Supp. 714, 719 (S.D.N.Y. 1986) (quoting *Chisholm-Ryder Co., Inc. v. Sommer & Sommer,* 421 N.Y.S.2d 455, 457 (N.Y. App. Div. 1979). Under New York law, a claim for account stated requires a plaintiff to establish: (1) an account was presented; (2) the account was accepted as correct; and (3) the debtor promised to pay the amount stated. *Press Access LLC v. 1-800 Postcards, Inc.*, No. 11-cv-1905, 2011 WL 6202887, at *3 (S.D.N.Y. Dec. 13, 2011), *aff'd*, 543 F. App'x 23 (2d Cir. 2013).

Plaintiffs argue they are entitled to summary judgment on their account stated claim based on the testimony of Viktoriya Farber, an FT&T employee. (Pl. Mem. at 16-17.) Farber testified that she spoke to Mikhlin by telephone in April or May 2008 and requested that he pay plaintiffs' invoices for shipment of the Odessa Vehicles. (Pl. 56.1 ¶ 30.) According to Farber, Mikhlin promised to pay the amount stated but did not do so. (*Id.*) Farber also testified that she mailed copies of the

invoices to TCM's offices and they were not returned as
undeliverable.  (Pl. 56.1 ¶ 34.)

This evidence does not establish plaintiffs' right to
recover for account stated against TCM.  Plaintiffs have not
shown, as a matter of law, that TCM accepted the outstanding
invoices as correct or promised to pay the account.  Farber's
allegations are directed only against Mikhlin and, as discussed,
the current record does not permit a finding that Mikhlin acted
on TCM's behalf.  Moreover, this claim may be moot if plaintiffs
recover on their breach of contract claim.  *See Martin H. Bauman
Assoc., Inc. v. H & M Int'l Transp., Inc.*, 567 N.Y.S.2d 404
(N.Y. App. Div. 1991) ("[A] claim for an account stated may not
be utilized simply as another means to attempt to collect under
a disputed contract.").  Accordingly, the parties' cross-motions
are denied as to plaintiffs' claim for account stated.

## V.    Dishonored Check

Plaintiffs seek summary judgment on their claim for
dishonored checks based on two TCM checks Mikhlin allegedly
presented to plaintiffs that were returned for insufficient
funds.  (Pl. 56.1 ¶¶ 25-27.)  Although the checks were issued
from TCM's "Chase 4120 Account," for which Evgeny Freidman is
the only authorized signatory, TCM contends the checks were
forged and dishonored by Chase "because these checks were never

27

intended to be written by Taxi Club or its president Evgeny Freidman in the first place." (TCM Mem. at 23.)

Under New York law, "a check embodies a statutory contract . . . to pay the amount of the check in cash. If the check is dishonored, the creditor may sue either on the dishonored check or the underlying debt." *V.D.B. Pac. B.V. v. Chassman*, 753 F. Supp. 2d 202, 205 (S.D.N.Y. 2010) (quoting *Bombardier Capital, Inc. v. Richfield Hous. Ctr., Inc.,* 91-cv-502, 1994 WL 118294, at *8 (N.D.N.Y. Mar. 21, 1994) (citing New York U.C.C. §§ 3-104(1)(b), 3-104(2)(b), 3-413(2))). However, "[t]he payee of a check is subject to any defense . . . of a maker with whom he has dealt." *Peter v. P.P. of New York, Inc.*, No. 96-cv-0538, 1997 WL 473978, at *3 (S.D.N.Y. Aug. 20, 1997).

The statutory basis for plaintiffs' dishonored check claim appears to be Section 3-414(b) of the Uniform Commercial Code, which states:

> [i]f an unaccepted draft is dishonored, the drawer is obliged to pay the draft (i) according to its terms at the time it was issued or, if not issued, at the time it first came into possession of a holder . . . [t]he obligation is owed to a person entitled to enforce the draft or to an indorser who paid the draft under Section 3-415.

U.C.C. § 3-414(b).

Plaintiffs allege that TCM withdrew otherwise available funds from the Chase 4120 Account to avoid paying plaintiffs after the Odessa Vehicles were released to Mikhlin.

28

(Pl. Reply at 9-10.)  TCM counters that it never voluntarily issued checks to plaintiffs, and Freidman testified under oath that the dishonored checks were forged.  (TCM 56.1 Reply ¶ 25.) These disputes suffice to raise genuine fact issues as to whether TCM issued checks to plaintiffs for the Odessa Vehicles. The parties' cross-motions for summary judgment therefore are denied as to plaintiffs' claim for dishonored checks.

## VI.  Abandoned Claims

TCM moves to dismiss plaintiffs' 11th cause of action, for common law fraud and fraud in the inducement; 12th cause of action, to "Pierce the Corporate Veil;" 13th cause of action, for violation of RICO under 18 U.S.C. § 1962(c); and 14th cause of action, for conversion and breach of fiduciary duty.  (Def. Mem. at 19-23.)  Plaintiffs, who are represented by counsel, do not meaningfully address these causes of action in their own motion for summary judgment, or in opposition to TCM's cross-motion for summary judgment.  With respect to the fraud claims, plaintiffs conclusorily assert that they "have established that they did in fact communicate with TCM via Igor Mikhlin, and that Mr. Mikhlin represented TCM" without further explanation. Plaintiffs are completely silent with respect to the veil piercing, RICO, and conversion/breach of fiduciary duty claims. Because plaintiffs' opposition does not address TCM's arguments for summary judgment on plaintiff's 11th, 12th, 13th, or 14th

causes of action, those claims are deemed abandoned as to TCM. *See Jackson v. Federal Express*, 766 F.3d 189, 195 (2d Cir. 2014) (holding that when a counseled party moves for summary judgment, "a partial response [by the non-movant] arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims"); *Avola v. Louisiana-Pac. Corp.*, 991 F. Supp. 2d 381, 390 (E.D.N.Y. 2013) ("Plaintiffs' failure to acknowledge, let alone address, the remaining five claims in opposing the [summary judgment motion] signals the abandonment of these claims."); *Struthers v. City of N.Y.,* No. 12-cv-242, 2013 WL 2390721, at *18 (E.D.N.Y. May 31, 2013) ("[The court deems plaintiff's] claim against the City abandoned. [The plaintiff] fails to address defendants' argument for summary judgment on this claim in his opposition brief."). Accordingly, TCM's motion for summary judgment is granted as to plaintiffs' 11th, 12th, 13th, and 14th causes of action.

## CONCLUSION

For the reasons set forth herein, plaintiffs' motion for summary judgment is denied.  TCM's cross-motion for summary judgment is granted with respect to plaintiffs' claims for unjust enrichment, fraud and fraud in the inducement, piercing the corporate veil, violation of RICO under 18 U.S.C. § 1962(c), conversion, and breach of fiduciary duty.  TCM's cross-motion for summary judgment otherwise is denied.

The parties are directed to file a joint status letter by October 12, 2016 indicating how they intend to proceed and proposing dates for trial.

**SO ORDERED.**

Dated:    September 30, 2016
          Brooklyn, New York

                         _____/s/_____
                         Kiyo A. Matsumoto
                         United States District Judge